Mr. Justice. WAYNE
delivered the opinion of the court.
• The. question raised in this case by the agreed statement of facts upon the record, is, Does-the act of Maryland of 1841, chap. 23, so fax as.it .imposes-a tax-upon the shares of stock- held by stockholders 'in the ■ Union Bank of Maryland and the other banks mentioned in the statement, impair the obligation of a contract ?
The banks are classified -in .-that statement as the old and the new banks. The old are those which were chartered previous to the" year 1821; the new, those which were chartered .after the year 1830.
Their exemption from the: tax- imposed by‘the act of 184J is claimed under the acts of Maryland of 1821, chap. 131, and that of the 19th March. 1835, chap. 274, called the act of the session 'of 1834:'
*145 . It is admitted that-the old banks accepted and have complied with the terms and conditions of the act of 1821; .that they also accepted •and have complied with the provisions of the act of 1834; and that taxes have always, since the incorporation of the banks, been assessed and levied upon, their real and personal property in all the cities and counties of the state, in the same manner as upon property, of - the same kind belonging to individuals, and that they have always been paid by the banks up to this time'.
The question, however, which this court is called upon to decide, and to which our decision will be donfined, isj Are the shareholders in the old and the new banks liable to be .taxed, under the act of 1841, on account of the stock which they own in the banks ?' '
. The statement given-by the reporter of the acts of the legislature of Maryland, by which the -charters of the banks have been extended at different times, makes it- unnecessary to refer to them in detail here.
Aré the old banks in Baltimore and their stockholders exempted from further- taxation during the continuance of their charters under the act of 182.1,..chap.-131, by force-of the 11th section of that act? C.an' the old- banks, after the -year 1845, th¡¿ time to which their chan ters'were .extended .by .the act of 1821 j-and.the new banks, claim' any exemption from' taxation under the act of 1834, chap. 274, un-léss-'it be a-tax upon their-franchise .of banking ?
It appears, from-the acts of 1812, 1813, and-1821, th t the legislatures .which passed them had. in view the construction of the Cumberland and Boqnsborough.turnpike roads, and the establishment of a school-fund.- That they designed to accomplish those objects by making some of the banks construct the roads, and all of them contributors to the school fund, as the price for their charters; A round sum, pr-an. annual charge,-with or without reference to capital stock, may be' asked by a legislature for such a-franchise. It may be more convenient-to-the banks to have such a consideration or bonus distributed' through- the years of their, corporate existence, than to- pay its equivalent .in advance. - This option-was given to'the old banks. Being so given, it is conclusive that the legislature intended the annual tax-or charge upon' the capital stocks of the banks to be the bonus, or .price,- or- part of the price as to some of them, that they were .to.pay for the :prolongation of their-franchise of banking. When the banks accepted the acts, by -choosing to pay the annual chárge instead óf the stipulated alternative, it is plain that- they thought so too', and that they understood in- that way the contract between' themselves and the state. Either was a condition, to be. accepted, and complied with befoi e the charters were to be extended, Such a contract is a limitation upon the taxing power of the legislature making it, ¿nd upon .succeeding legislatures, to impose any further tax upon the franchise. • But why, when bought, as it becomes property, may it not be taxed, as land is taxed which has *146 bought from the • state, was repeatedly asked in the course of argument? The reason is, that every one buys land, subject in own apprehension to the great law of necessity, that we must contribute'from it and all of our property, something to maintain, the But a franchise for banking, when bought, the price is paid-the use of the privilege whilst-it lasts, and any tax upon it would substantially be an addition to • the price. ■ But whether the bonus the franchise is paid by an annual tax upon the capital, stock, or any other way, it is in the discretion of die legislature to tax the. capital stock as an aggregate, according to its actual value, or the stockholders on account of their separate ownership of it, Or the dividends in the aggregate, or the- stockholders on account of their portions, of them. The limitation and. the power to tax, as both have' been just expressed, was substantially conceded by counsel .-both side's of this, cause. We- did- not understand the counsel for appellants as contending,-that the.shareholders in. the old banks' rkere exempted' from the tax imposed upon them' on account of their stock,.except by the force of the 11th section of the act of 1821. Their argument was; though the franchise might .be t-axed separate from the stock of a hank, whether the annual tax paid, by the-banks upon their capital stock was a tax upon their franchises or not, that banks were-exempted from further taxation; the. old banks by force of the 11th section of the statute, of 1821’, ;ánd all of .the banks Baltimore by force of the act of 1834. - The argument of jhe counsel for the defendant in error was, that the annual tax paid -by banks was a tax upon-their franchises, and that the-11th section did not give-to the .stockholders any exemption from being taxed as persons- On account of their, stock'. ■ Whether or not the exemption given -by that section is extended to' the- old and the new banks in virtue of the act of 1834, is another question,-to which a separate answer must be given, in the course of this Opinion-.
' Has' such Sn exemption' guage of the 11th section of the act of i 821 "is: “And be it enacted, That, upon any of the afpresai'd banks accepting'and complying with the terms ¿nd conditions of .this act,, the 'faith of the state is hereby pledged not to impose any further tax. or -burden upon them.during the continuance of their charters-under this act.”- This is the Jan-age of grave-deliberation, pledging the. faith of- the-state for some. purpose--some effectual purpose; - Was. that purpose the protection of the banks from what that legislature and succeeding^legislatures could-not do, if the banks accepted the actpor-from what they might do, m-the exercise Of the taxing power ?' --The ternas and conditions of - the act were,- that the banks should construct the road and pay annually a designated -charge upon their capital stocks, as the price for the prolongation of their franchise of banking.’ - The power ofthe-state to lay any-further tax- upon the franchise was exhausted. . That is the contract between the state-and the báhks. It follows, then, *147 as a matter of course, when the legislature go out of. the contract, proposing to pledge its faith, if the banks shall accept the act, nOt to impose any further tax or burden upon them, that it must have meant by.those words an exemption from some.other tax than a further tax upon- the franchise of the banks. The-latter -was already provided-' against. ' To confine the pledge to any further tax upon thé franchise, surrenders thé whole, clause as a substantive enactment, to a supposed needless declaration o'f the legislature, that it would not do What it had stipulated by its contract .not to do.. The faith of states is .never pledged.but for some substantial eñd, within the-,, com-.potency of their legislative power; and It' is not for us to suppose-:that of Maryland was given in tiie -act of 1821, with a less grave intent. “ Not to impose any further- tax or -burden,” when used in. reference to some tax already imposed, means no pther tax besides .that to. which reference is made.- Those words, so usedy cannot-be limited by a refinement upon the etymology of the word “any,”:out of or beyond its. meaning in common discourse, to any like; and the ■ words “ any further tax,” used with relation to.some other tax, will, .by common consentías' it always'hás:been, be intended to- mean .any additional tax besides.that referred to,- aid' not- any further ■like tax. ...
Having determined: “that the clause in question was not meant as n pledge against further' taxation upon the franchises of thé banks, but. that it was a pledge against additional taxation, what is the extent of exemptionxgiven by it, or to what doés -it apply.?- Does it exempt -the respective capital, stocks of the banks, as an aggregate, and-the stockholders from.being taxed as persons on account of their stock ? We think it does-both. The aggregate .could not be taxed,. without its having the same effect upon the.part's, .that ajax-upon the parts,, would have upoh the whole. .Besides, the legislature, in proposing the- térras and conditions of the act, use the word “ banks’-’.' with reference' to the consent or acceptance of the act being'given by the stockholders,' according to a fundamental article of f heir charters: ■ The acceptance of the.act could only be made'by the-stockholders. They .did accept, and the state recognised it as the act of • the stockholders. It could not have been given;or been' recognised ih any other way. ■ True it is, when accepted and recognised, it became a contract with the banks. But' its becoming a. contract with the banks determines of itself nothing. We must look in.what eha-. racter, or by whose assent it was to- become a contradi'with the state, to ascertain the intention of the legislature in making the pledge, “that upon any of'the aforesaid banks accepting of ana complying with the terms and conditions of this act, the faith of the state is here* by pledged not to impose any further tax or burden upon them during-the continuance of their charters'under this act.”
The-senses in which the words .bank or banks '. are, used, occur every day in conversation, and are understood by. every one. But *148 e 5 8, "^0. j“4ciB '' " -r* q- ® 5 s &, g. jf-T- £'S:'§,|l'S'6ili§'a> & g ft; o' ¡3 si S S^o-» o' 02 B* £2 53 CD P-i I CD CD CD P CU ¿Kí** sj* fD *-< p g __ S ,o 5 ^ _. «^^*CD rt- Mjfy ' (D O pH pH gf'S.'a'o -• S &,» S ~ •« St ,f=l 9 £'¿ §^!*' g PM g _ -O ^ es p f>, CD fer <* ^^“g-Ssft- p ®s ft* 2 o P o,® g*52 % o'*5 ~ &*Sf ®L ^ 4f *! g* " s-'ttg-^p á.t*4 ° S3 ^S5 "* a'&S' g- -s o S £3 a 3 1-Hro 5a cd a a t-t- CD *-< Z$gZli r-t- w P y jy (D ft “.CR ff. gs tí- o r-H CD -*i w .— ■ ■ t** 5 ra ■p' ^ ft g "*9 jr|r*-8?ffsa-3 §a*1 • ’o-B ° ¿6S' ■ H « e^' pgfi tí <■+■ P ft P- CD g rH-rbft » .g. “I?» g •_,&, S&S'H "’I®.- <N gaq l° gls'SgN' 8- Sen? •n.-r 8-3-f.a sri. r^-j <u*y tí £ j 3-'ch< to* m. °.tj « tí <u H .S£-J •Sun ° <U o W u tí tí <1) rtí o^-^-tí a 5 tí **d f f-s ti f gg g'^-F^g &-rj g s^g^s ^ ^^On-RmawfB Q.S O rt-(3 i — .wtíct>_Ra>QJ3iSr£1c4-Cr,OCD.C¡^ . ^ tí 02 tí* p-^ go g. g tí O —t. SK >-* S' e * go &> ^-* O o->5° B ~"
Í & * ¿ ó ^ g'-tiS a “ c^K-S'O P ■ ft«.á ,® |*B ® ^5 ® g-g- 1 ^O ft.1-'f-i'o c" o ° p - s-i M rtf “ S'ctq ptí P tí p-105 tí tí-o-1^ G-» ^ tí Oj pj a* '^■’^ S ^ ^^i^CD^rt^- rt-5 B « 2 2 E.X O ^O5 PL'tí- 5 tí CD PPr« i. tí(C9(DHvM(t(Etítí & H i® So 13 J cá fg s-j-s-!Sl.g.-5i<sm O Ctí o tí tí íiL m ^ ^ tí^ SP • CD S 5. S’ tí; o tí o hrjtí" tí 2 2- ^ tí^ tí o» _• «“+• tí § S'® te n> ■B ’ te j; 5] ^ a'® n _. §■ m tí- tí- s. h >-* ® a ffi P. ío ¿ 1T3 ^ M - g. te g ^ H g. m p w J'í» ¿ co tí —3 ü *“3 tí w- tí ¿5 X 03 tíw^.tí w |?!=&wkey;2.B o5^! 3 S^S •g-'teJ3 o” 0.2 o. S'® | O sgg ° £ H G tí M r¿ . . g-s ¡-i “ tí M H! ogS* tí • S. ffia 'tí o „ ‘ tí tí ?£ tí tí a. o í o p tí *. ^S* erq o 0* tí O §■ £ &6 v-^ M rt - s l'^s--r5 -*** Q ^ ]> <L> r- tí gí3 P-i2 S3 &00 o ■P j* ° o Sí m <ü ^ .. ^ p s p.' CL< P ch. O *H M h* CD w ^ O g B O-P P P CD — CD a g SJV<¡ _ tí-« 5-1-cTo ÍH ^3 w a tí íd a 2, cd tí. oo . ^ ^ tí ^* Sj S 02 t. >»JT3 O « OPd)*' O fe C¡ ^ a tí ^ g 'ti 8 ® ÍT>oíg 2 ü S^S t tü ^ ti -2 p « rP g'p-P'" » §*5 g;^ o'Sg | tí\ . Pjgj^P ^*.P ■ Ph p! ft CJ O. <{ CD a* a- a^ a tí W CD' tí CD g. ^ P 2 S p'-S o .<} a * a! cd «-+ B*- B h*'o cd cd pj S.'l tí&'Pjíí M 0.^1 P
&*> ft glO CD CD Ph tí P» as-s*^ § § s-i ^ B-crq WfT3'a“ te*1 <3 aj cd hJ-S p ^ ° o'og, * b b «N-p <r p5>3 ^ P CR S' o' s' g,!?5^ tf?í§ a SS«3^ a- • co >-a ^ a* o 'o o ^ 8 Q.'^’g I-1 ° P^ 2 to <e S-' «• p.^ g o 2 > S ° Í3 á < >1 tí CD tí CD P- CD P*»» § ^ P- P p"1 *149 other banks,-by the abt of 1813. The 11th sections in both acts are identical. In what spirit were, those acts offered to the acceptance' of the banks ? In what spirit was it that the banks viewed and accepted these acts? It was an unusual way of providing means for the construction of turnpike roads. The tolls might turn out to be enough to compensate them for the expenditures. They might not. Though the legislature thought the construction of the roads and paying the school-fund tax were no more than an adequate price for an extended franchise, it is very certain that the stockholders may have thought, that the incorporation of the banks into turnpike companies, with an obligation upon them to withdraw so much money from their business operations as was sufficient to finish the-roads, presented only a contingent possibility that they could be remunerated by tolls from the roads. When the act of 1821 was proposed, they had some experience of what had been the result of the construction of the Cumberland road. Is it not possible, then, that when the acts of 1813 and 1821 were in preparation, or as they were being enacted, that the 11th section was introduced as an inducement to the stockholders to accept those -acts ? Whether the tolls from the road have ever compensated the banks for the expenditure upon them, does not appear’- in the case. But it was natural that the stockholders, knowing as they did that a. tax upon-the franchises of the banks would not exempt them from other taxation, stipulated in both instances that-a provision should be introduced into the acts surrendering the state’s right to tax them further than ■they were about to be by those acts. In whatever way we examine the acts of 1813 and 1821, we are of opinion that it appears, from the 11th sections in those.acts, to have, been the intention of the legislatures which, passed them, to exempt the stockholders from taxatión as persons on account of the stock which they owned in the banks. This exemption, however, is limited to the old banks in Baltimore which were chartered before 182.1, during the continuance of their charter under the act of 1821. It is founded upon the 11th section of that act,- and it is our opinion that the act ' of 1841, chap. 23, in so far as it imposes a tax ilpon the stockholders in those banks, on account of their stock, does impair, the obligations ..of a contract, and is void by the 10th section of the 1st article of the Constitution of the United States.
The act of 1834 does not extend to the old or the new banks an exemption from the tax imposed by the act of 1841, chap. 23. It is an act to extend the charters of the several banks in Baltimore. The .second section.prescribes the-terms upon which the franchise for banking is extended. Those terms are the payment annually of twenty per cent, upon every hundred - dollars of the respective capitals of the-banks, and their proportional parts of $75,000, in two yearly instalments, computed from the passage of the act, according to the combined rates of their respective capitals paid in, *150 and of the time for which their charters are respectively continued beyond the first day of January, 1845.
Upon a failure of any bank to pay either the annual charge or its proportional instalment, its charter is declared null and void. • The-annual charge and the instalment malee' the bonus to be paid by each bank for its continued franchise. It was urged for the old and the new banks, that, the annual tax which they were required to pay’ by the second -section of the act óf 1834 being upon their respective ■capitals, a tax -upon the stockholders on account of their stock-would-be equivalent to an increase of the price-which had been given for the franchise. The effect upon the stockholders.would be the same, as they pay both, but that is because they agreed- to pay an annual tax upon the capital stock, for their franchise., without any stipulation by the state that they were not to be taxed as stockholders, on account of their stock, as was the case in the. eleventh section of the act of 1821. The franchise is their corporate, property, which, like any other property, would be taxable,-if a price had not been paid for it, which the legislature accepted, as the consideration for allowing them to use the franchise during the continuance of their charters. '. The capital stock is -another property — corporately associated, for the purppse of banking — but in its parts is the individual property of the stockholders in the-proportions they may own them: Being their individual property, they may-be taxed for it, as they toay for any other property they may own.. This is not Only the case in Maryland. A franchise for banking is in every state of the unión recognised as property. The banking capital attached to the franchise is ánother property, owned in its parts by persons, corporate or natural, for which they are liable to be taxed, as they are for all other property, for the support of government.
We are of opinion that the stockholders in the old banks are exempt from the tax imposed by the act of 1841, chapter 23, during the continuance of their charters under the act of 1821, but that the stockholders in the old and -new banks are liable to be taxed by the act of 1841, or that they can claim no exemption under the act of 1834, by which„their charters were further extended.
The judgment of the Court of Appeals is therefore reversed, and the cause will be remanded, with directions to enter up a judgment for the plaintiff in error.